Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

NICHOLE NOLAN, individually and in a )
representative capacity for decedent, )
CHARLENE ANN BUTLER, )
                 )
          Plaintiff, )
                 )
v. )
                 )    Case No.: 2522-CC09475
DUTCHTOWN CARE CENTER, INC., )
individually and d/b/a "Dutchtown Care Center," )    Div. 1
    Serve: Carl C. Lang )
         7733 Forsyth, 4th Floor )
         Clayton, MO 63105 )
                 )
SAGE NURSING & REHAB LLC, individually )    **JURY TRIAL DEMANDED**
and d/b/a "Magnolia Wellness Center," )
    Serve: VCorp Agent Services, Inc. )
         5661 Telegraph Road #4B )
         St. Louis, MO 63129 )
                 )
PARKLANE CARE AND REHABILITATION )
CENTER, INC., individually and d/b/a "Parklane )
Care Center," )
    Serve: Carl C. Lang )
         7733 Forsyth, 4th Floor )
         Clayton, MO 63105 )
                 )
A.F.T., INC., )
    Serve: Carl C. Lang )
         7733 Forsyth, 4th Floor )
         Clayton, MO 63105 )
                 )
THOMAS O. DAAKE, SR., )
    Serve: 26 Portland Place )
         St. Louis, MO 63108 )
                 )
ADELE DAAKE, )
    Serve: 26 Portland Place )
         St. Louis, MO 63108 )
                 )
and )
                 )
JOHN and JANE DOE 1 THROUGH 20, )

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

)
Defendants.                           )

## FIRST AMENDED PETITION FOR DAMAGES

Plaintiff Nichole Nolan, individually, as surviving daughter to Charlene Ann Butler, and in a representative capacity for all person identified by RSMo. § 537.080, by and through her attorneys, states:

### THE PARTIES

1.    Decedent Charlene Ann Butler, who was born on April 14, 1943, and died on October 7, 2024, was a resident of Magnolia Wellness Center f/n/a Dutchtown Care Center, a skilled nursing facility located at 3421 Gasconade Street in the City of St. Louis, St. Louis, Missouri.

2.    This action was commenced by decedent's surviving daughter, Nichole Nolan, who is a resident of Wentzville, Missouri.

3.    Defendant Dutchtown Care Center, Inc. operated a skilled nursing facility by the name of Dutchtown Care Center at 3421 Gasconade Street in St. Louis, MO 63118 under a license issued by the Missouri Department of Health & Senior Services and operated, controlled, and conducted the business of a skilled nursing facility at said premises in the City of St. Louis, Missouri.

4.    Defendant Sage Nursing & Rehab LLC operated a Limited Liability Company at 4525 Wilshire Boulevard, Suite 210, Los Angeles, CA 90010-3846 in the business of providing healthcare services and ownership to and of Magnolia Wellness Center at 3421 Gasconade Street in St. Louis, Missouri under a license issued by the Missouri Department of Health & Senior Services and operated, controlled, and conducted the business of healthcare services at said premises.

2

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

5.      Defendant Parklane Care and Rehabilitation Center, Inc. operates a corporation at 6642 Clayton Road, St. Louis, Missouri in the business of providing healthcare services to Magnolia Wellness Center f/k/a Dutchtown Care Center at 3421 Gasconade Street in St. Louis, Missouri under a license issued by the Missouri Department of Health & Senior Services and operated, controlled, and conducted the business of healthcare services at said premises.

6.      Defendant A.F.T., Inc. operates a corporation at 3421 Gasconade Street, St. Louis, Missouri in the business of providing healthcare services to Magnolia Wellness Center f/k/a Dutchtown Care Center at 3421 Gasconade Street in St. Louis, Missouri under a license issued by the Missouri Department of Health & Senior Services and operated, controlled, and conducted the business of healthcare services at said premises.

7.      Defendants Thomas O. Daake, Sr. and Adele Daake operate businesses providing healthcare services at Magnolia Wellness Center f/k/a Dutchtown Care Center at 3421 Gasconade Street in St. Louis, Missouri under a license issued by the Missouri Department of Health & Senior Services and operated, controlled, and conducted the business of healthcare services at said premises.

8.      Defendants Thomas O. Daake, Sr. and Adele Daake had and/or have a partnership and ownership interest in Magnolia Wellness Center f/k/a Dutchtown Care Center, Parklane Care and Rehabilitation Center, Inc., and A.F.T., Inc. as their majority shareholders. They, individually and collectively, through the named defendants provided operational and management services to Magnolia Wellness Center f/k/a Dutchtown Care Center, a proprietary nursing home operating under Missouri's Omnibus Nursing Home Act and subject to state regulations. At all relevant times, individually and through the named defendants, Defendants were in the business for the care and treatment of persons in need of nursing home care. Moreover, previous owners Thomas

3

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

O. Daake, Sr. and Adele Daake are or were upon information and belief majority owners operating Magnolia Wellness Center f/k/a Dutchtown Care Center, Parklane Care and Rehabilitation Center, Inc., A.F.T., Inc. and other nursing home facilities owned, operated, and/or managed by defendants and their myriad of corporate interests, including the defendant companies named herein.

9.      Upon information and belief, Defendants Thomas O. Daake, Sr. and Adele Daake are or were residents of the State of Missouri. At certain times material to this action, Defendants Thomas O. Daake, Sr. and Adele Daake formed Magnolia Wellness Center f/k/a Dutchtown Care Center, Parklane Care and Rehabilitation Center, Inc., and A.F.T., Inc. (hereinafter collectively referred to as the "Corporate Defendants") to further the businesses of their nursing home operations in Missouri.

10.     Defendants Thomas O. Daake, Sr. and Adele Daake negotiated for themselves management and realty services provided by the Corporate Defendants to Magnolia Wellness Center f/k/a Dutchtown Care Center. They negotiated favorable terms associated with the healthcare services between Corporate Defendants and Magnolia Wellness Center f/k/a Dutchtown Care Center all for their individual benefit.

11.     The agreements Defendants Thomas O. Daake, Sr. and Adele Daake negotiated for themselves were solely for the benefit of themselves and the other Corporate Defendants named herein except Magnolia Wellness Center f/k/a Dutchtown Care Center, where residents such as Charlene Ann Butler were to receive care.

12.     At all relevant times, defendants collectively chose to decrease the financial resources available to Magnolia Wellness Center f/k/a Dutchtown Care Center nursing facility where residents such as Charlene Ann Butler were to receive care.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

13.    Defendants retained the power to hire and terminate at will employees of the Magnolia Wellness Center f/k/a Dutchtown Care Center facility and the other facilities and structures they jointly own in whole or in part.

14.    Defendants Thomas O. Daake, Sr. and Adele Daake, individually, and in conjunction with and through the Corporate Defendants, including Sage orchestrated additional compensation for their role(s) as members and were responsible for overall management and planning of the operations of Magnolia Wellness Center f/k/a Dutchtown Care Center. Defendants Thomas O. Daake, Sr. and Adele Daake, along with the Corporate Defendants, directly participated in creating conditions at Magnolia Wellness Center f/k/a Dutchtown Care Center, which led to the injuries and death suffered by Charlene Ann Butler, by directing or authorizing the manner in which the facility's cost-cutting, budget and staffing was instituted with no regard for the discretion and the interest of Magnolia Wellness Center f/k/a Dutchtown Care Center or its residents, including Charlene Ann Butler. Defendants Sage, Thomas O. Daake, Sr. and Adele Daake, individually and through all Corporate Defendants, created a budgetary and staffing strategy, which minimized employee quantity, employee quality, safety, training, and supervision in order to maximize profits.

15.    Corporate Defendants were entities whose formal, legal structures are unknown but whom it is believed and therefore averred owned, operated, maintained, controlled, managed, financed and in all ways operated the business of a skilled nursing facility at 3421 Gasconade Street, St. Louis, Missouri including caring for the decedent and deviated from accepted standards of practice in areas of: resident care; violation of the Missouri Residents Bill of Rights, (RSMo 198), drafting and enforcement of policies and procedures; hiring, retaining and deployment of

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

adequate numbers of staff; supervision of employees; and allocation of financial resources at Magnolia Wellness Center f/k/a Dutchtown Care Center.

16.     The true names and capacities of Defendants Does 1 through 20 are unknown to plaintiff, who sues these defendants by fictitious names and will seek leave of Court to amend this Petition when the true names and capacities have been ascertained. Plaintiff alleges that each defendant designated as a "Doe" was responsible in some manner for the events and happenings which proximately caused injury and death to plaintiff's decedent, Charlene Ann Butler.

17.     Said deviations were the cause of harm suffered and death by plaintiff's decedent as averred herein.

18.     At this juncture, before discovery, while defendants clearly know the identities of the persons acting on their behalf, plaintiff is unaware of the specific identities of those persons who acted as defendants' agents and prior to discovery lack information as to the identifies of defendants' management and supervisory personnel.

19.     Accordingly, plaintiff cannot specifically identity by name, the agents referred to hereafter and are able only to describe, prior to discovery, what said actions each of them performed or failed to perform.

20.     At all relevant times, defendants together controlled or had the right to control the clinical and financial aspects of the operations of Magnolia Wellness Center f/k/a Dutchtown Care Center and exercised consistent oversight of Magnolia Wellness Center f/k/a Dutchtown Care Center in the form of daily, weekly, monthly and annual reporting and monitoring.

21.     At all relevant times, defendants received funds and profited from the funds received by and from Magnolia Wellness Center f/k/a Dutchtown Care Center from residents either by private pay, Medicare, Medicaid or other payor sources.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

22.    At all relevant times, defendants were engaged in a joint venture enterprise during decedent's residency at Magnolia Wellness Center f/k/a Dutchtown Care Center. Each defendant had equal right to share in the control of the operation of the nursing home during decedent's residency, regardless of whether such right was actually exercised.

23.    At all relevant times, defendants controlled the operation, planning, management and quality control of the skilled nursing facility. The authority exercised by defendants over the skilled nursing facility included, but was not limited to: control of marketing, human resources management, training, staffing, creation and implementation of policy and procedure manuals used by the skilled nursing facility, federal and state Medicare and Medicaid reimbursement, quality of care assessment and compliance, licensure and certification, legal services, and financial, tax and accounting control through fiscal policies established by defendants.

## AGENCY

24.    At all relevant times, defendants were acting by and through their agents, servants and/or employees in providing skilled nursing care to decedent.

## JURISDICTION AND VENUE

25.    Venue and jurisdiction are proper because the acts and omissions complained of herein occurred in the City of St. Louis, Missouri because defendants operated a skilled nursing facility in the City of St. Louis, Missouri where the negligence occurred.

## FACTS OF THE OCCURRENCE

26.    Decedent was admitted to Magnolia Wellness Center f/k/a Dutchtown Care Center on or about September 8, 2023, which is a skilled nursing facility.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

27.     After admission Charlene Ann Butler's condition deteriorated requiring updated care plans, transfer(s) to medical facilities, and/or nursing home(s) which did not occur on a timely basis, causing or contributing to cause decedent's death.

28.     On or about October 6, 2024, decedent, while unsupervised, was fatally injured in or around the activity room. Plaintiff's decedent was found lying face down on her stomach with blood coming from her nose and mouth. This resulted in a subdural hemorrhage as well as facial fractures and a 4th metacarpal fracture.

29.     Defendants' staff members failed to provide decedent with any supervision, oversight, assessments, examinations or other attention causing her fall and death.

30.     As a consequence of decedent's injuries and neglect, decedent succumbed to these injuries dying on October 7, 2024, at SSM Health Saint Louis University Hospital.

31.     Decedent's injuries and death was, however, in whole or in significant part, the result of the neglect of care needs by defendants and their staff when decedent resided in Magnolia Wellness Center f/k/a Dutchtown Care Center.

32.     The failure to provide plaintiff's decedent with adequate care, assistance, and supervision were substantial factors in causing or contributing to cause her injuries and death as set-forth herein.

33.     When decedent resided at Magnolia Wellness Center f/k/a Dutchtown Care Center decedent suffered neglect by and through insufficient staffing and insufficient supervision for which defendants offered no or insufficient changes in her care to protect her from injuries and death although they knew or should have known that the results of such failures would result in decedent's injuries and death both which were foreseeable.

8

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

34.    Prior to her death, decedent suffered significant pain, suffering and distress as a result of these injuries.

35.    Furthermore, decedent's family, to this action, have suffered the loss of her guidance, comfort, and companionship to which they are entitled.

36.    The care deficiencies that led to the aforesaid fatal injuries to decedent were caused, *inter alia*, by the lack of sufficient numbers of adequately trained staff and the failure to assign enough appropriately trained staff to decedent as required and agreed to by defendants.

37.    This resulted in whole or in part from defendants' decisions to retain excessive profits from facility operations rather than use those monies for resident assistance, assessment, supervision and direct care.

38.    The foregoing decisions were made with callous indifference to decedent's health and wellbeing and were made in reckless disregard of the risks to which they exposed decedent and all of the residents of the facility.

39.    The foregoing, therefore, was the result of errors, omissions, reckless disregard, malicious conduct, and/or willful and wanton misconduct of defendants as aforesaid who knew or should have known that facility staffing at the time in question was inadequate to properly care for and protect decedent, that it presented a high and certain risk of causing harm to decedent and other facility residents, including death.

**COUNT I**

**WRONGFUL DEATH**

40.    Plaintiff incorporates by reference all prior allegations.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

## A.    Negligence Per Se – Violations of State Regulations

41.    As the entities who owned, operated, possessed and controlled the skilled nursing facility in which these events occurred, administered, directed, operated, controlled, monitored and supervised the daily activities of its agents, servants and employees (as set-forth through this Petition with the greatest specificity possible prior to discovery) in all of their business operations and had the duty, and did assume the duty, to assure their compliance with applicable state laws and regulations, standards of care and the terms of any and all agreements between plaintiff, decedent, and said skilled nursing facility.

42.    The duties and activities of defendants, in operating, owning, possessing, and controlling said skilled nursing facility, were legally required to comply with the laws and regulations set-forth for skilled nursing facilities in the State of Missouri.

43.    Although these regulations do not impart by direct reference therein, a private cause of action for breaches of them, these regulations do constitute a body of specific mandatory requirements and care standards required in all activities at the skilled nursing facility, including those operated, owned, managed and/or controlled by defendants as well as the individuals providing care to residents therein.

44.    The purpose and intent of the regulations is to protect the health, safety, and well-being of the skilled nursing facility residents and, as a skilled nursing facility resident, decedent was one of the persons whose interests were intended to be protected by said regulations.

45.    Furthermore, said regulations specifically provide therein for specific rights to residents including of skilled nursing facilities set-forth by the State of Missouri.

46.    Accordingly, while these regulations do impose specific obligations upon defendants by the Missouri Department of Health & Senior Services, which enforces them, they

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

also, by the terms thereof, establish a personal right of all residents at skilled nursing to live free of neglect or physical mistreatment of all kinds.

47. Furthermore, the obligations, duties and requirements of care imposed upon skilled nursing facilities, including the defendants' facility in this case, constitute, in part, the minimum standards of care owed to residents of such facilities by their owners and operators.

48. Accordingly, under Missouri law, violations by defendants, their agents, servants, and employees herein of the provisions of said regulations as alleged herein constitute negligence *per se*.

49. Those regulations that defendants breached during and up to the time of decedent's death included:

    a. Failing to provide plaintiff's decedent with assistance walking, conducting and completing regular and frequent observation of decedent to ensure that she was engaged in safe activities to reduce or eliminate the likelihood of unsupervised walking and supervision and monitoring of decedent's activities;

    b. Failing to establish and implement a quality management plan that periodically reviews and evaluates staff training, staff actions, facility assessment criteria, licensing violations and plans of correction and implements measures to address the areas needing improvement that are identified during periodic reviews, assessments and evaluations;

    c. Failing to provide adequate numbers of staff to meet the needs of the residents, including decedent, as specified in the resident's assessment and care plan, and/or facility assessment which resulted in decedent receiving care that was in violation of applicable regulations and standards of care;

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

d.  Failing to provide adequate direct care staff training to initially hired employees and annual training to the entire staff in those areas set-forth therein;

e.  Failing to perform an adequate assessment after decedent's admission so as to determine whether and how the decedent's needs could be more safely met in defendants' skilled nursing facility or if she needed transfer to another facility with greater supervision of residents;

f.  Failing to perform an adequate assessment following changes in decedent's condition so as to determine whether and how her care needs could still be met in defendants' skilled nursing facility as it was then designed, constructed, constituted, organized, structured and staffed; and,

g.  Defendants' actions constitute abuse including but not limited to neglect of the resident, which resulted in physical harm, pain, and/or mental anguish, physical injuries and death.

## B.    Joint Venture/Aiding & Abetting

50.    Defendants made an agreement, express or implied, had the equal right to control, and did exercise such control, over the business operated, by and through defendants' agents, under the name of Magnolia Wellness Center f/k/a Dutchtown Care Center.

51.    The common purpose of defendants' agreement was to maximize the profits of Magnolia Wellness Center f/k/a Dutchtown Care Center by providing insufficient funding to hire qualified staff and to comply with state and professional regulations as well as the professed policies and procedures of Magnolia Wellness Center f/k/a Dutchtown Care Center, by understaffing Magnolia Wellness Center f/k/a Dutchtown Care Center, and by staffing Magnolia

12

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

Wellness Center f/k/a Dutchtown Care Center with improperly trained or unqualified staff, including, but not limited to inadequate staff quantity.

52.    The common purpose of the agreement among defendants was to maximize the profits of Magnolia Wellness Center f/k/a Dutchtown Care Center, and in doing so maximize the profits to each member of the agreement, thus creating a community of pecuniary interest among the members.

53.    Defendants, whether through their administrative, supervisory, nursing, custodial, and corporate representatives and their agents, servants, employees or otherwise, had the right to control or else exercised significant control over decedents' custodial and health care by the nature of their businesses activities insofar as they were to:

      a.  Provide or effectuate certain diagnostic evaluations and assessments of decedent evolving and progressing physical health and medical condition via periodic examination, observations and assessment as required under applicable regulations and/or standards of care;

      b.  Provide services in accordance with portions of periodic care plans prepared by them for decedent including, but not limited to, medical, nursing, rehabilitative, diagnostic, fall risk assessments, curative and palliative services;

      c.  Determine decedent's need for and effect the delivery of certain medical interventions including evaluation and reporting changes in condition to doctors, monitoring of her nutrition and hydration, request hospitalizations for her medical conditions and the delivery of prescription drugs and other medical, and rehabilitative treatments;

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

    d.   Participate in and undertake duties relating to evaluations and diagnoses of the nature and extent of the medical, nursing and custodial services required by decedent; and,

    e.   Allocate financial resources and enter into contracts and agreements with third parties providing for the availability and delivery of services to residents of its skilled nursing facility including decedent.

54.    As a resident of defendants' facility, decedent's choices in her custodial and health care decisions were substantially limited and controlled by defendants, themselves or through their agents.

55.    Defendants owed legal duties directly to and beyond any vicarious liability of their agents, servants or employees to plaintiff and her decedent to:

    a.   use reasonable care in the maintenance, hiring and procurement of safe, skilled, and adequate facilities, staff, and equipment;

    b.   oversee all persons who practiced nursing and care within its walls as to patient care; and,

    c.   formulate, adopt, and enforce adequate rules and policies to ensure quality care for the patients.

56.    Defendants operated, administered, controlled, managed, and maintained all administrative, supervisory and care giving activities at the skilled nursing facility in which decedent resided.

57.    Defendants controlled, regulated, effected, influenced, and directed expenditures, allocated financial resources and funding, oversaw the care provided to its residents, promulgated and enforced policies and procedures at the skilled nursing facility in which decedent resided and

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

undertook the responsibility to provide care to the residents consistent with accepted standards of practice.

58.    Accordingly, defendants are directly, and jointly severally liable to plaintiff for all of the breaches of duties of care owed to decedent as set-forth hereinafter, as well as for those breaches of duties of care owed decedent by its agents, servants, and employees all of which constitute deviations from standards of care which caused decedent harm and plaintiff the damages set forth herein.

59.    Defendants treated Magnolia Wellness Center f/k/a Dutchtown Care Center as its cat's paw or else aided and abetted Magnolia Wellness Center f/k/a Dutchtown Care Center's torts, as follows:

(a)    These other defendants knew that Magnolia Wellness Center f/k/a Dutchtown Care Center was going to breach, or had breached, its legal duties to plaintiff's decedent (as well as the other residents at the "Magnolia Wellness Center f/k/a Dutchtown Care Center" skilled nursing facility);

(b)    These other defendants gave substantial assistance or encouragement to the other defendants to breach these duties;

(c)    Such substantial assistance or encouragement proximately caused Magnolia Wellness Center f/k/a Dutchtown Care Center to commit its torts, including those against plaintiff's decedent.

**C.    Ordinary Negligence**

60.    Defendants jointly, severally and or successively, owned, operated, managed, maintained, controlled, possessed, budgeted, supervised, and staffed the custodial and elder care services at Magnolia Wellness Center f/k/a Dutchtown Care Center.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

61. The injuries and death to and of decedent as set-forth herein were a direct and proximate result of defendants' joint and several breaches of their direct duties of care owed decedent as well as those of their agents, servants, and employees in violating applicable standards of care and applicable regulations, all of which have been set-forth and identified herein.

62. Accordingly, as a result of defendants' inadequate record keeping, plaintiff has alleged the elements of negligence and substandard care committed by defendants to the greatest degree possible prior to discovery with the expectation and belief that further facts in support of the allegations herein shall be later established.

63. Defendants' negligence included:

    a. Failing to create and follow the provisions of defendants' care plan so as to provide decedent adequate supervision and numbers of staff as provided for and required in said are plan;

    b. Failing to provide decedent the assistive devices and supervision she required in order to maintain, protect and preserve her health, safety and well-being;

    c. Failing to keep adequate, consistent and necessary records of her custodial and medical care including, but not limited to her orientation at the facility so that her care givers and family could obtain information as to her need for intervention;

    d. Failing to hire, retain, employ, and train adequate numbers of the required skilled and qualified staff to provide treatment, monitoring and care services to decedent;

    e. Failing to promulgate, disseminate and enforce acceptable policies and procedures in the facility;

16

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

f.  Failing to provide the care and supervision of decedent that defendants and their representatives promised plaintiff they would provide;

g.  Knowingly failing to initiate processes to discharge and transfer decedent to another facility that could meet her care and custodial needs when defendants and their agents, servants, and employees knew that her care and safety could not be maintained and protected at Magnolia Wellness Center f/k/a Dutchtown Care Center;

h.  Failing to hire and retain sufficiently trained medical and nursing staff at Magnolia Wellness Center f/k/a Dutchtown Care Center relying instead upon untrained persons lacking adequate knowledge to make care and treatment decisions;

i.  Failing to prevent neglect to the decedent of such a character and to such an extent that it constituted and amounted to abuse and neglect as defined by applicable standards and regulations;

j.  Failing to allot sufficient portions of operational revenue to remain at Magnolia Wellness Center f/k/a Dutchtown Care Center to fund adequate and necessary care and, instead, harvesting and retaining unreasonable and unwarranted revenue from facility operations thus depriving decedent of the care which she required and which was necessary for maintenance and protection of her health and well-being;

k.  The failure to diagnose and/or treat decedent's needs was a consequence of defendants minimizing expenditures to maximize facility profits which, in turn, were a direct cause of the short staffing, poor training, lack of staff to

17

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

provide care and lack of supervisory staff needed to ensure that policies, procedures and standards of care were being implemented; and,

l.  Acting and failing to act as aforesaid as a result of each defendants' decision to maximize defendants' financial and economic gain by:

  i.  Maintaining high rates of occupancy at the facility; and

  ii.  Generating private pay and insurance revenues; and,

  iii.  Generating higher revenues and unearned salaries for the benefit of the officers, directors, and owners of defendants.

64.  On or about September 8, 2023, Charlene Ann Butler became a resident of Magnolia Wellness Center f/k/a Dutchtown Care Center in the City of St. Louis, Missouri.

65.  When admitted to Magnolia Wellness Center f/k/a Dutchtown Care Center, Charlene Ann Butler did not have conditions threatening her life or health.

66.  Upon her admission to Magnolia Wellness Center f/k/a Dutchtown Care Center, Charlene Ann Butler was able to feel pain and remained able to feel pain to the day of her death.

67.  During her residence, defendants abused and neglected Charlene Ann Butler's needs, care, and treatment. During her residency, Charlene Ann Butler was allowed to suffer injuries as a result of defendants' negligent care and treatment. The injuries she suffered on or about October 6, 2024 caused or contributed to cause her death on October 7, 2024.

68.  Defendants by and through their owners, management, and employees failed to provide immediate medical care, diagnoses and treat the decedent's life-threatening injury, which led to her wrongful death.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

69.     On and before October 6, 2024, defendants by and through their negligence, failed to adequately transfer, place, supervise, check, monitor, care for or assist Charlene Ann Butler which caused, or contributed to cause her injuries and ultimately death.

70.     Charlene Ann Butler's injuries were a result of neglect by defendants which caused or contributed to cause her death on October 7, 2024. The deprivations Charlene Ann Butler suffered were the result of actions or omissions by defendants – and each of them – all of which caused the physical pain, suffering and death to Charlene Ann Butler.

71.     As a direct and proximate result of defendants' negligence as stated above, Charlene Ann Butler suffered a fall, physical abuse, severe pain, anxiety, mental distress, injuries, and ultimately death. Additionally, as a result of Charlene Ann Butler's injuries and death Plaintiff and her family  incurred expenses for her medical care, funeral and burial.

72.     As a further, direct and proximate cause of the negligence of defendants, plaintiff has sustained losses because of Charlene Ann Butler's death in the nature of loss of services, companionship, comfort, instruction, guidance, counsel, training and support.

**D.     Professional Negligence**

73.     Defendants were healthcare providers, providing healthcare to plaintiff's decedent.

74.     Defendants' provision or failure to provide healthcare services to plaintiff's decedent failed to meet the requisite standard of care for such healthcare providers.

75.     Defendants' professional negligence proximately caused the injuries to, and death of, plaintiff's decedent.

WHEREFORE, plaintiff prays that judgment be entered against defendants, jointly and severally, and that plaintiff be awarded (1) a fair and reasonable amount of damages, greater than $25,000, including damages authorized by Section 538.215 and 537.090, RSMo.; (2)

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

attorney fees, (3) costs, (4) post-judgment interest, and (5) any other relief, legal or equitable, that is just and proper.

## COUNT II

### LOST CHANCE OF RECOVERY OR SURVIVAL[1]

76.     Plaintiff incorporates by reference all prior allegations.

77.     As healthcare providers to plaintiff's decedent, defendants had a duty to professionally diagnose and treat Charlene Ann Butler.

78.     Defendants breached that duty by failing to professionally treat or diagnose the medical problems, injuries, and diseases of plaintiff's decedent.

79.     Defendants' breach of their professional duty to plaintiff's decedent eliminated whatever chance she had to recover or survive.

80.     It's impossible to establish that plaintiff's decedent died because of defendants' negligence, individually or collectively.

WHEREFORE, plaintiff prays that judgment be entered against defendants, jointly and severally, and that plaintiff be awarded (1) a fair and reasonable amount of damages, greater than $25,000, including damages authorized by Section 538.215 and 537.090, RSMo.; (2) attorney fees, (3) costs, (4) post-judgment interest, and (5) any other relief, legal or equitable, that is just and proper.

---

[1] Counts II is pleaded in the alternative to Count I. *See* Rule 55.10 ("A party may set forth two or more statements of a claim . . . alternately or hypothetically, either in one count . . . or in separate counts . . . When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims . . . has regardless of consistency and whether based on legal or equitable grounds.").

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

**CONSTITUTIONAL CHALLENGE**

COME NOW Plaintiff, by and through counsel, and raise the below constitutional issues at the earliest opportunity as required by Missouri law as follows:

1.      In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

2.      In failing to provide an index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of equal protection set forth in Art. I, § 2 of the Missouri Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

3.      In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of open courts and certain remedies set forth in Art. I, § 14 of the Missouri Constitution by denying medical negligence plaintiffs free and open access to Missouri's courts of justice and a certain remedy afforded for every injury.

4.      In failing to provide an index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of open courts and certain remedies set forth in Art. I, § 14 of the Missouri Constitution by denying medical negligence plaintiffs free and open access to Missouri's courts of justice and a certain remedy afforded for every injury.

5.      In failing to provide an index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, 538.215 violate Art. I, § 26 of the Missouri Constitution by taking private property without just compensation.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

6.    In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest.

7.    In failing to provide an index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, 538.215 violate Art. I, § 10 of the Missouri Constitution by depriving medical negligence plaintiffs of due process of law without a rational basis that furthers a legitimate state interest.

8.    In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the right to trial by jury set forth in Art. I, 22(a) of the Missouri Constitution.

9.    In failing to provide an index for inflation on the limits for non-economic damages, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the right to trial by jury set forth in Art. I, 22(a) of the Missouri Constitution.

10.    In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of equal protection set forth in the United States Constitution by treating medical negligence plaintiffs differently than other negligence plaintiffs without a rational basis for doing so.

11.    In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the guarantee of due process of law set forth in Art. I, § 2 of the United States Constitution without a rational basis that furthers a legitimate interest.

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

12.     In limiting the amount of non-economic damages a plaintiff in a medical negligence case may recover from a jury, R.S. Mo. §§ 538.205, 538.210, 538.215 violate the right to trial by jury set forth in the Seventh Amendment to the federal Constitution.

13.     In limiting the amount of non-economic damages that a plaintiff may recover in a medical negligence case R.S.Mo. §§ 538.205, 538.210, 538.215 violate the right of substantive due process inasmuch as the legislature is substituting its judgment regarding the amount of compensation due to a plaintiff without any consideration of (1) the nature of the injury; (2) the severity of the injury; (3) the wrongfulness of the defendant's conduct ; or (4) the impact of the injury on the plaintiff's ability to enjoy life and liberty; and by so doing the above statutory cites deny the medical malpractice plaintiff a cognizable liberty interest by infringing on the constitutionally guaranteed right to have damages determined by a jury with respect to the award of non-economic damages.

14.     By requiring plaintiff's counsel to submit an affidavit stating that counsel has obtained the written opinion of a legally qualified health care provider that each defendant had breached the applicable standard of care, purports to limit the definition of "legally qualified health care provider" to those who either are practicing or have recently practiced the same specialty as the defendant, and purports to require the court to dismiss the action if either plaintiff's counsel fails to submit said affidavit or, after in camera review of the written opinion, the court determines that there is not probable cause to believe that a qualified and competent health care provider will testify that the plaintiff was injured due to medical negligence by a defendant, R.S.Mo. §538.225 violates plaintiff's right to open courts and a certain remedy for every injury, guaranteed by Article I, Section 14 of the Missouri Constitution, violates plaintiff's right to trial by jury, guaranteed by Article I, Section 22(a) of the Missouri Constitution, violates

Electronically Filed - CITY OF ST. LOUIS - February 04, 2026 - 03:40 PM

the separation of powers, established by Article II, Section 1 of the Missouri Constitution, and violates the requirement that any law amending or annulling a Supreme Court rule of practice, procedure, or pleading be limited to that purpose, established by Article V, Section 5 of the Missouri Constitution.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO ALL MATTERS**

Respectfully submitted,

DREESEN LAW GROUP, LLC

*/s/ D. Matthew Dreesen*
D. Matthew Dreesen, #43641
16105 Swingley Ridge Road #4097
Chesterfield, MO  63006
(636) 449-4400 Office
(636) 220-7161 Facsimile
mdreesen@dreesenlaw.com

***ATTORNEY FOR PLAINTIFF***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 4, 2026, I electronically filed the foregoing with the Clerk of the Court by using the Court's electronic filing system which will send a notice of electronic filing to all who have entered an appearance in this matter.

*/s/ D. Matthew Dreesen*
Attorney